IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**LORENZO ROBINSON**                                                               **PETITIONER**

**v.**                              **No. 2:07CV120-M-A**

**STATE OF MISSISSIPPI, ET AL.**                              **RESPONDENTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner petition of Lorenzo Robinson for a writ of *habeas corpus* under 28 U.S.C. § 2254. The state has responded to the petition, and Robinson has replied. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* shall be denied.

**Facts and Procedural Posture**

The petitioner is currently in the custody of Terry O'Brien, Warden of the Lee United States Penitentiary in Jonesville, Virginia serving a federal sentence. Upon his release from federal custody, however, Robinson will be returned to the custody of the Mississippi Department of Corrections to serve out two consecutive state sentences of life without parole, which are the subject of the instant habeas action. S.C.R., Vol. 1, pp. 27-28. Robinson received those sentences for convictions on charges of aggravated assault (Count I) and conspiracy to commit murder (Count II) in the Circuit Court of Coahoma County, Mississippi. S.C.R., Vol. 1, pp. 21-22.

Robinson appealed the convictions and sentences on the charges to the Mississippi Supreme Court, citing as error (as stated by Robinson through counsel):

1. Whether the trial court committed error in allowing improper testimony concerning defendant's alleged connection to gang activity by State's witness Norman Starks.

2. Whether the trial court committed error in allowing a prior inconsistent statement to be admitted without a limiting instruction when said statement was also improper hearsay testimony by State's witness Tiffany Marion.

3. Whether the trial court erred by failing to sustain the Appellant's motion for a new trial as the Jury's verdict was against the overwhelming weight of the evidence.

After considering the merits of Robinson's claims, the Mississippi Supreme Court affirmed Petitioner's convictions and sentences. *Robinson v. State*, 940 So.2d 235 (Miss. 2006) (Cause No. 2005-KA-01676-SCT).

Robinson then filed a petition for post-conviction collateral relief in the Mississippi Supreme Court, citing as error (as stated by Robinson *pro se*):

1. Trial counsel provided ineffective assistance of counsel in violation of Robinson's Sixth Amendment right where he failed to raise a confrontation clause violation when law enforcement officer provided improper hearsay testimony.

2. Trial counsel violated Robinson's Sixth Amendment right to effective assistance of counsel where he failed to object to the impermissible use of a co-defendant's guilty plea during trial and closing argument and trial court's omission of curative instructions.

3. Trial counsel violated Robinson's Sixth Amendment right to effective assistance of counsel where he failed to object to the prosecutor's impermissible reference to Hampton's alleged statement during closing argument.

4. Trial counsel provided ineffective assistance of counsel in violation of Robinson's Sixth Amendment right where he failed to raise the claim of law enforcement officers providing improper "expert testimony."

5. Appellate counsel violated Robinson's Sixth Amendment right to effective assistance of counsel where he failed to raise a confrontation clause violation on direct appeal.

6. Trial and appellate counsel's cumulative errors resulted in Robinson being denied effective assistance of counsel in violation of the Sixth Amendment.

The Mississippi Supreme Court denied Robinson's petition holding in pertinent part, "The panel finds that the claims of ineffective assistance of counsel at trial and direct appeal fail to meet the standard required by *Strickland v. Washington*, 466 U.S. 668 (1984)."

In the instant *pro se* federal petition for a writ of *habeas corpus*, Robinson raises the following six grounds for relief (as stated by Robinson *pro se*):

Ground One: Ineffective assistance of counsel: Trial counsel provided ineffective assistance when he failed to raise a Confrontation Clause violation when law enforcement officer provided improper hearsay testimony. *See Crawford v. Washington*, 541 U.S. 36 (2004) and *Strickland v. Washington*, 466 U.S. 668 (1984).

Ground Two: Ineffective assistance of counsel: Trial counsel failed to object to the impermissible use of co-defendant's guilty plea during trial and closing argument and trial court's omission of curative instructions. *See United States v. Hanson*, 544 F.2d 778 (5th Cir. 1977).

Ground Three: Ineffective assistance of counsel: Trial counsel failed to object to prosecutor's impermissible references to deceased witness's alleged statement. *See Crawford v. Washington*, 541 U.S. 36 (2004).

Ground Four: Ineffective assistance of counsel: Trial counsel failed to raise the claim of law enforcement officer providing expert testimony when officer was not admitted as an expert. *See Kuhmo Tire Co. v. Carmichael,* 526 U.S. 137 (1997).

Ground Five: Ineffective assistance of counsel: Appellate counsel provided ineffective assistance of counsel when he failed to raise the Confrontation Clause violation on direct appeal. *See Douglas v. Alabama*, 380 U.S. 415 (1965) and *Evitts v. Lucy*, 469 U.S. 387 (1985).

Ground Six: Ineffective Assistance of Counsel: Trial and appellate counsels' cumulative errors resulted in petitioner being denied effective assistance of counsel. *See, Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999).

**Grounds Reviewed on the Merits in State Court**

The Mississippi Supreme Court has already considered all six grounds of the instant petition on the merits and decided those issues against the petitioner. Hence, these claims are barred from federal *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to an grounds of the instant petition.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

## Ineffective Assistance of Counsel

The petitioner brings all of his claims under a theory of ineffective assistance of counsel, which is governed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), requiring the petitioner to prove both that his counsel was deficient in his performance and that counsel's deficiency prejudiced the petitioner's legal position. Under the deficiency prong, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). As discussed below, the petitioner has proved neither deficient performance nor prejudice for any of his claims of ineffective assistance of counsel.

### Grounds One and Five: Failure to Object to Introduction of Hearsay Testimony, Causing Violation of the Petitioner's Rights Under the Confrontation Clause

Robinson claims that both trial and appellate counsel failed to argue that the state violated the confrontation clause of the United States Constitution by allowing Officer Norman Starks to provide hearsay testimony regarding details of the "Mafia Insane Vice Lord Gang," of which the

petitioner was proven to be a member. Starks testified regarding the clothing typically worn by gang members, tattoos common to the organization, and Robinson's member ship in the gang:

> Q: I asked you if you, uh, knew of any connection [between Evans, Johnson and Petitioner]. If you do know of one, can you tell us how you know that connection? For instance, how long have you been, uh, an officer and, and has it been that entire time in Clarksdale, and so forth?
>
> A: Yes, I've been, uh, here in law enforcement in Clarksdale, Mississippi, for eleven (11) years. Uh, I've seen and, uh, uh, dealt with, uh, Lorenzo Robinson, Kenyon Evans, and, uh, George Johnson. Uh, I've interviewed, uh, Kenyon. I interviewed George Johnson. I've interviewed other, other, uh, people that's associated with this incident, and they have all said and told me that –
>
> ....
>
> Q: Uh, and, uh, what is that relationship?
>
> A: Uh, Mafia Vice Lord.
>
> Q: Okay, they're in the, that is a gang?
>
> A: Yes, it is.
>
> Q: Okay. Uh, how long, to your knowledge has this, uh organization existed in, uh, Clarksdale?
>
> A: Uh, through my knowledge, approximately eight (8) years.
>
> ....
>
> Q: Uh, let me ask you about, uh, uh, uh, gangs. Uh, do gangs have certain, uh, uh tattoos?
>
> A: Yes, they do.
>
> ....
>
> Q: And, uh, do, do gangs have tattoos?
>
> A: Yes, they do.

Q: And are those tattoos particular as to that type of gang?

A: Yes.

Q: Uh, do gang members hang together?

A: Yes.

Q: What about in certain areas of town?

A: Yes.

Q: And would you explain that?

A: Uh, yes, uh, in, uh, this particular town, in this particular city, uh, you have, uh, uh, different branches of the Vice Lord that, uh, hangs in, uh, different part of town, which is located on Forty-Seven Beat, which is, uh, from the area of DeSoto Street all the way back up to Richey Street area, and that's known as Vice Lord territory. Uh, in this certain little area in which, uh, that was occupied, uh, by the defendant and, uh, the other names that were mentioned, uh, this area was occupied by Mafia Vice Lord.

Q: Okay, and have you seen them there together?

A: Yes, I have.

Q: Okay. And, uh, do, uh, do they dress similar?

A: They dress similar.

Q: Okay. Is there a particular type of way that various gangs dress.

A: Uh, yes, uh, but, uh, a lot of emphasis now is not put on the, uh, the different clothing now. Uh, but there, there, there has been and there still is a trend as far as dressing wise.

Q: Well, about, uh, uh, a couple of years ago was there a similarity in dress?

A: Yes.

> Q: Okay. So you're talking about the areas and the dress, the tattoos, and the, uh, uh, uh, and the fact that they are found together. Uh, would these, uh, uh, uh, observations of yours cause you to, uh, uh, testify that these individuals, Kenyon Evans, Little George, and the defendant Tymoochie were in the same gang?
>
> A: Yes, sir.

S.C.R., Vol. 2, pp. 36-38 and S.C.R., Vol. 2, pp. 70-72.

Robinson argues that Starks could not have known such details about the gang without talking to members of the gang – or those close to gang members – and, as such, the testimony set forth above was hearsay. Thus, following Robinson's argument, use of this testimony violated his Sixth Amendment right to confront the witnesses who actually provided Starks with the information – and to subject those witnesses to cross-examination. The argument, however, fails for several reasons. First, Robinson's attorney did, in fact, object to the introduction of the testimony under MISS. R. EV. 602 for lack of personal knowledge. During the direct examination of Starks, the prosecutor attempted to introduce testimony that Robinson and several others were members of the Clarksdale gang known as the Mafia Insane Vice Lords. S.C.R., Vol. 2, pp. 36. Robinson's counsel objected to the introduction of such testimony because Starks could not show that he had personal knowledge of the facts the prosecutor was attempting to prove. *Id.* The trial court did not rule on the objection because the prosecutor said he would soon cover how Starks obtained his knowledge of the petitioner's gang. S.C.R., Vol. 2, pp. 37. However, when the prosecutor immediately attempted to introduce hearsay testimony regarding what other people told Starks, defense counsel objected again – this time on hearsay grounds. *Id.* The court first sustained the objection, then overruled it. *Id.* at 37-38. Thus, as trial counsel indeed objected to the introduction of the testimony in question, Robinson's claim that counsel was ineffective for

failing to do so shall be denied.

In addition, the testimony of Starks to which Robinson objects established only that he and others were members of the Mafia Insane Vice Lord gang in Clarksdale, Mississippi. However, other *actual members* of the Mafia Insane Vice Lords – Michael Ingram and Kenyon Evans – testified *directly* to establish those same facts. S.C.R., Vol. 3, pp. 149 and 278. The hearsay testimony to which Robinson objects thus merely duplicates direct testimony from other gang member witnesses. As such, even if defense counsel erred in failing to object to the testimony as hearsay and a violation of the confrontation clause, Robinson can show no prejudice from its introduction. For this reason, the petitioner's claim of ineffective assistance of trial counsel in Ground One must be denied. Further, as the court finds that no error (or, at the very most, harmless error) occurred at trial regarding this issue, appellate counsel was not ineffective for failing to raise the issue on direct appeal. *Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) (failure to raise meritless objections does not state claim for ineffective assistance of counsel). Therefore, the petitioner's claim in Ground Five (ineffective assistance of appellate counsel) must also be denied.

### Ground Four: Counsel Was Ineffective for Failing to Object When Law Enforcement Officers Testified as Experts

In Ground Four, Robinson argues that trial counsel was ineffective in failing to object as law enforcement officers Sergeant Starks (Clarksdale Police Department) and Jackson Price (Federal Bureau of Alcohol, Tobacco, Firearms and Explosives) testified as experts regarding their knowledge of the Mafia Insane Vice Lords – when the prosecution presented them only as lay witnesses. The petitioner argues that Starks' testimony regarding the identifying details of

the Mafia Insane Vice Lord Gang and its members constituted expert testimony. Similarly, Robinson argues that Price's interpretation of various phone calls made near the time of the murder was actually expert testimony. Robinson argues that the testimony in question was based on "years of experience on other cases," rather than specific knowledge obtained through the investigation of this particular case, and thus constituted expert testimony.

Experts are permitted under the rules of evidence to rely upon education and experience to offer opinions related to the case – and may rely on facts and opinions relayed by others in doing so. MISS. R. EV. 702 and 703. Rule 702, entitled "Testimony by Experts," states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 703, entitled "Bases of Opinion Testimony by Experts," states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject, the facts need not be admissible into evidence.

Thus, prosecutors may elicit opinion testimony from police witnesses and, in doing so, avoid the personal perception limits of MISS. R. EV. 701, which governs the testimony of lay witnesses. Further, when the opinion testimony comes from a law enforcement witness not qualified as an expert, prosecutors may circumvent the discovery requirement that applies to experts. Uniform Rules of Circuit and Chancery Court Practice 9.04(C)(3). Prosecutors should not, however, be permitted to have it both ways with law enforcement witnesses – benefitting

both from what amounts to expert opinion, while avoiding the discovery and disclosure requirements of using an expert. Law enforcement officers giving testimony regarding a similar topic – the jargon used by drug dealers and smugglers – have been accepted as experts on these matters. *United States v. Gibbs*, 190 F.3d 188 (5th Cir. 1999). Thus, on its face, this allegation states a claim – at least regarding the testimony of Sergeant Starks. To determine the validity of the petitioner's specific claims, however, requires a closer analysis.

Agent Jackson Price testified regarding records of telephone calls made among several phones near the time of the murder – phones attributed to Lorenzo Robinson, Michael Ingram, Lillian Brownlee, and Kenyon Evans. He created charts to show who called whom and when those calls occurred in relation to the time of the murder – but not the content of the conversations. His testimony regarding the sequence of calls – and the creation of the charts – required no specific expertise, only common sense. The state had alleged a conspiracy among Robinson and others to commit murder. The state, through telephone records, Price's charts, and direct testimony of several witnesses participating in the telephone conversations at issue, proved that the communication among the defendant and others constituted a conspiracy. Price's testimony regarding this issue was limited to the timing and sequence of telephone calls – and required no special knowledge or expertise. As such, this testimony was properly offered and accepted by the trial court as that of a layman.

In addition, even if the court were to hold that Price's testimony was that of an expert, counsel's performance was proper because he objected repeatedly to Price's references to facts obtained from others. *See,* S.C.R. Vol. 3, pp. 212-213 (objection under MISS. R. EV. 602 to Price's testimony that Lucy Robinson was the defendant's mother); p. 214 (objection to alleged

involvement between Robinson and Evans as hearsay); p. 218 (hearsay objection to Price's testimony regarding the people from whom Michael Ingram received phone calls); pp. 220-221 (hearsay objection to Price's assertion that Robinson used his mother's cellular phone). Counsel's objections to introduction of these facts as hearsay or for want of personal knowledge were, however, overruled by the trial court. For these reasons, the court holds that Agent Jackson Price's testimony regarding the timing and sequence of telephone calls was not that of an expert, and counsel was thus not deficient in failing to object to the testimony as such.

Starks, on the other hand, did give testimony requiring special knowledge – the various tattoos, clothing, and other characteristics identifying individuals as members of the Mafia Insane Vice Lords. Robinson's attorney, however, objected to the use of this testimony on the grounds that Starks had no personal knowledge of these facts – and thus his testimony was based solely upon hearsay evidence. S.C.R., Vol. 2, pp. 36-37. The trial court sustained the objection initially and gave the prosecution the opportunity to lay a foundation for the introduction of the testimony, establishing Starks' credentials – his training as a police officer and his years of experience as a law enforcement officer in the Clarksdale area. The prosecutor's act of laying this foundation had the effect of establishing Starks' qualifications as an expert in the area of Clarksdale gang member identification, rendering the testimony that of an expert. *United States v. Griffith*, 118 F.3d 318 (5th Cir. 1997) (permitting testimony of government witness regarding cryptic drug dealer jargon as expert, despite the government's failure to proffer the witness as an expert). In addition, despite Robinson's contention in the present § 2255 motion, his attorney objected to the introduction of this testimony for want of personal knowledge, but was overruled. Finally, the testimony in question merely established that Robinson and others were members of

-13-

the Mafia Insane Vice Lord gang – a fact established by direct testimony of other gang members at trial. As such, to the extent that introduction of Starks' testimony was error, that error was harmless because it was merely cumulative. *Id.* (applying harmless error analysis). Therefore counsel did not err in his handling of the testimony of Starks and Price. As such, the decision of the Mississippi Supreme Court regarding this issue was reasonable in fact and in law, and Robinson's claims in Ground Four shall be denied.

### Ground Two: Trial Counsel Was Ineffective for Failing to Object to the Introduction of the Guilty Plea of Robinson's Codefendant Kenyon Evans During Trial – and Mentioning the Guilty Plea During Closing Argument

Robinson alleges in Ground Two that trial counsel was ineffective for failing to object to the state's use of Kenyon Evans' guilty plea during trial and closing arguments – and the trial court's failure to offer a curative instruction to the jury. In support of his claim, Robinson cites *United States v. Hansen*, 544 F.2d 778 (5th Cir. 1977). In *Hansen*, the trial court informed the jury that Hansen's co-defendant had pled guilty prior to trial, purportedly in an attempt to explain his absence. The Fifth Circuit Court of Appeals noted that the co-defendant pleaded guilty prior to trial, that there was no mention of the plea in the record, and that the co-defendant did not testify. *Id.* at 780. As such the Fifth Circuit held that "there is no need to advise the jury or its prospective members that someone not in court, not on trial, and not to be tried, has pleaded guilty." *Id.* However, in *United States v. Veltre*, 591 F.2d 347 (5th Cir. 1979), the Fifth Circuit upheld use of a co-defendant's guilty plea. The court held that use of the guilty plea was proper because, unlike the facts in *Hansen*, the co-defendant in *Veltre* appeared in court as a state witness. *Id*. at 349. "Where, as here, the codefendant is a witness at trial, subject to the rigors of cross-examination, disclosure of the guilty plea to blunt the impact of attacks on her credibility

-14-

serves a legitimate purpose and is permissible." *Id.* "Evidence of a coconspirator's conviction is admissible and commonly used for impeachment purposes." *United States v. Leach*, 918 F.2d 464, 467 n.4 (5th Cir. 1990). "If the codefendant testifies, ... either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the codefendant's credibility as a witness." *United States v. Ramos-Cardenas*, ---- F.3d ----, *9, 2008 WL 946065 (5th Cir. 2008).

As happened in *Veltre*, the co-defendant in the present case, Kenyon Evans, *did* testify at trial – called by the defense. In addition, Evans was named as a co-conspirator in Robinson's indictment, which was entered into evidence at trial. As such, the jury was clearly aware of Evans. Furthermore, as Evans was called by the defense, his guilty plea was admissible for impeachment, and Robinson cannot claim prejudice based upon this revelation. Thus, the Mississippi Supreme Court's denial of Robinson's claim in Ground Two of ineffective assistance of counsel based upon the prosecution's use of Kenyon Evans' guilty plea was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, this decision was not based on an unreasonable determination of the facts in light of the evidence. As such, Robinson's claim for relief in Ground Two shall be denied.

### Ground Three: Trial Counsel Was Ineffective for Failing to Object to the Introduction of a Statement of the Victim in Violation of the Confrontation Clause

In Ground Three, Robinson argues that trial counsel should have objected to the state's references to a statement made by the victim prior to his murder. The victim gave the statement in question to Sergeant Starks during his investigation of the aggravated assault of the victim.

On direct examination, Starks testified that he had interviewed both the victim and Peppie Deon Wright in his investigation of that case and that their statements were "essentially the same." Then, in closing argument, the state reiterated that these two statements were "essentially the same" and, as such, the jury had been presented with evidence of two witnesses to the aggravated assault. Robinson argues that trial counsel should have objected to use of this reference as a violation of his right to confront witnesses used against him.

In *Crawford*, the Court held that testimonial hearsay is admissible only if the declarant is unavailable to testify at the trial – and the accused had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374. The Court noted, however, that not all hearsay evidence is testimonial such that the core concerns of the Confrontation Clause are implicated. *Id*. at 51, 1364. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law– as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Id*. at 68, 1374. "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1044 (1985). In addition, the court must use three factors to determine whether improper comments by a prosecutor warrant reversal: (1) the magnitude of the statement's prejudice; (2) the effect of any cautionary instructions given; and (3) the strength of the evidence supporting the conviction. *United States v. Wise*, 221 F.3d 140, 153 (5th Cir. 2000); *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1994). Therefore, in order to have received relief on this claim, counsel

would have had to have shown not only that *Crawford* was violated but also that the prosecutor's comments warranted relief.

The court holds initially that the state never offered the statement of the victim Hampton – or that of Wright – into evidence. Sergeant Starks took statements from both Wright and the victim; however, he never testified regarding the content of those statements, and the statements themselves were not entered into evidence. In addition, Wright never referred to the statements during his testimony. Thus, the jury knew only that the two men gave similar statements to the police at the time of the crime. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EV. 801. The Mississippi rule is identical. MISS. R. EV. 801. The statement of the murder victim Hampton was not offered or entered into evidence; nor was the statement of Wright. For that reason alone, the statement does not qualify as hearsay. In addition, as the contents of both statements were not presented to the jury, they could hardly be offered to "prove the truth of the matter asserted" under the rules governing hearsay. Thus, neither of the statements even qualifies as hearsay. In addition, as neither statement was offered into evidence, neither statement was testimonial in nature. As such, *Crawford* does not apply. *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374.

Even if hearsay testimony of the victim Hampton had been introduced at trial, Robinson lost his right to object to its introduction on confrontation clause grounds under the doctrine of forfeiture by wrongdoing. The Supreme Court described this doctrine in *Reynolds v. United States*, 98 U.S. 145, 159, 8 Otto 145, 25 L.Ed. 244 (1878), stating: "[t]he Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if

a witness is absent by [the defendant's] own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away." The *Crawford* Court reiterated the doctrine noting, "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds." *Crawford v. Washington*, 541 U.S. at 62. In a more recent decision, the Supreme Court held that federal courts have "generally held the Government to a preponderance-of-the-evidence standard . . . ." *Davis v. Washington*, 547 U.S. 813, 833, 126 S.Ct. 2266 (2006). The state introduced overwhelming evidence to support its claim that Robinson conspired to murder the victim, thus causing the victim to be unavailable to testify. Therefore, under the doctrine of forfeiture by wrongdoing, Robinson is barred from raising a confrontation clause claim.[1]

In the end, Robinson suffered no prejudice by the reference to the victim's statements. First, neither the statements themselves nor even summaries of their content were entered into evidence, and, thus, the jury never heard them. As such, there was no hearsay evidence about which to object. Additionally, even if the content of the victim's statement had been presented to the jury, it would have merely been cumulative to the testimony offered by Wright. Finally, any attempt to object to the statements, had they been in evidence, would have been overruled under

---

[1]The Supreme Court, in a very recent decision, upheld the doctrine of forfeiture by wrongdoing, but clarified the doctrine to encompass only those defendants who procure the absence of a witness for the very purpose of keeping that witness from testifying. *Giles v. California*, 554 U.S. ___ (2008). This holding would have no effect on the present case, however, under the general rule prohibiting retroactive application of newly announced rules. *See Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989). The exceptions to this general rule do not apply in the instant case. Even if the court were to apply the rule set forth in *Giles*, use of the victim's testimony would be permitted "when, for example, the defendant is on trial for murdering a witness to prevent his testimony." *See Giles, supra* at n. 6. That is the fact pattern currently before the court.

the doctrine of forfeiture by wrongdoing.

For all of these reasons, the court finds that counsel was not deficient for failing to lodge objections to mention of statements given by the victim to the police. *Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) (failure to raise meritless objections is not attorney error). As such, the Mississippi Supreme Court's holding that this claim failed to satisfy the requirements of *Strickland* was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Additionally, this decision was not based on an unreasonable determination of the facts in light of the evidence. Therefore, Robinson's request for *habeas corpus* relief set forth in Ground Three shall be denied.

## Ground Six: Cumulative Error

In Ground Six, Robinson argues that trial and appellate counsel's accumulated errors entitle him to *habeas corpus* relief. Cumulative error may stand as an independent basis for *habeas corpus* relief only when "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (*citing Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). Meritless claims – or claims that are not prejudicial – cannot be cumulated, regardless of the total number raised. *Derden*, 978 F.2d at 1461. As discussed in detail above, Robinson has proved neither error nor prejudice for any of his claims. As such, he has not shown that errors alleged, capable of review, have created a negative impact on the trial sufficient to cast doubt upon whether the verdict satisfied due

process. Therefore, the Mississippi Supreme Court's holding that the claim of cumulative error did not meet the requirements of *Strickland* was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. In addition, this decision was not based on an unreasonable determination of the facts in light of the evidence. Therefore, Robinson's claims for relief set forth in Ground Six shall be denied.

In sum, all of the petitioner's claims for relief are without substantive merit and shall therefore be denied. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 29th day of July, 2008.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**